UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
CRAIG WASHINGTON and NORKA          :    05 Civ. 8884 (LAP)
WASHINGTON,                         :
                                    :
                 Plaintiffs,        :
                                    :
         v.                         :
                                    :
THE CITY OF NEW YORK, SGT, THOMAS   :
KEHRLI, LT. ORSKY, DEPUTY INSP.     :
SALVATORE COMODO, SGT. DONALD       :
MCMASTER, DEPUTY CHIEF JOELLEN      :
KUNKEL, CAPT. EDWARD EDWARDS,       :
LT. JAMES SCULLY, SGT. ROBERT       :
DOWD, CAPT. PABLO MARTINEZ, LT.     :
SEAN JORDAN, SGT. THOMAS RICE,      :
DET. DENIS O'SULLIVAN, CHIEF        :
CHARLES CAMPISI, CAPT. KENNETH      :
DONOVAN, CAPT. EDWARD THOMPSON,     :
And P.O.s JOHN and JANE THE         :
N.Y.P.D. individually and in their  :
Official capacities (the names of   :
John and Jane the N.Y.P.D. being    :
Fictitious, as the true names are   :
Presently unknown),                 :
                                    :
                 Defendants.        :
                                    :
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/5/09

LORETTA A. PRESKA, United States District Judge:

    Plaintiffs Craig and Norka Washington bring this

action pursuant to 42 U.S.C. § 1983 ("Section 1983") and 42

U.S.C. § 1981 ("Section 1981") alleging discrimination,

false arrest, malicious prosecution, and malicious abuse of

process in connection with criminal and disciplinary

proceedings initiated against Mr. Washington in the summer

1

of 2004. Mr. Washington further alleges illegal employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the New York Human Rights Law ("NYHRL"), Executive law § 296 et seq., and the Administrative Code of New York. Defendants now move for summary judgment on all claims. For the reasons below, the motion is granted with respect to all claims other than Mrs. Washington's claim of false arrest.

## I. BACKGROUND

### A. The July 10, 2004 Incident

Mr. Washington began working as a detective for the New York Police Department ("NYPD") in 1985. (Plaintiffs' 56.1 Statement of Material Facts in Dispute, ("Pl. 56.1 Stmt."), ¶ 2.) On July 10, 2004, non-party Iris Suarez telephoned the NYPD Internal Affairs Bureau ("IAB") and reported that Mr. Washington, who Suarez described as her "boyfriend", had assaulted her. (See id. at ¶ 6; Declaration of Isaac Klepfish in Support of Motion of Defendants for Summary Judgment, sworn to July 11, 2008 ("Klepfish Decl.") Ex. L ¶¶ 2, 4.). Because the alleged misconduct involved a police officer, Defendant Captain Edward Edwards, along with members of the Bronx

Investigations Unit, interviewed Suarez. (Pl. 56.1 Stmt. at ¶¶ 10-11; Klepfish Decl. Ex. L ¶ 4.)  Suarez said that two days earlier, a verbal dispute with Mr. Washington culminated in a physical altercation in which he threw her on the ground and stomped on her left calf, causing bruising. (Klepfish Decl. Ex. L ¶ 4.)[1]  Mr. Washington admits that he met with Suarez on the day of the alleged

---

[1] In their Rule 56.1 statement, Plaintiffs admit that Suarez called IAB to complain about Mr. Washington, (¶ 6), but deny that Suarez made an assault allegation on the grounds that "Defendants cite no admissible evidence to support this claim", (¶ 12).  However, while Plaintiffs object to the Court's consideration of some police reports detailing the incident, (Klepfish Decl. Exs. G, H), and to consideration of photographs of Suarez's injured leg, (Klepfish Decl. Ex. K), on the grounds that these materials have not been authenticated, they do not object to Captain Edwards' report, dated July 10, 2004, (Klepfish Decl. Ex. L), which includes a summary of Suarez's statements to IAB investigators and her allegations of assault. (See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, ("Opp. Mem.") at 13-14.) Furthermore, the police reports are adequately authenticated by the deposition testimony of Defendant Thomas Kehrli, an IAB investigator, who said they were among materials he compiled in his case folder. (See Supplemental Declaration of Isaac Klepfish in Support of City Defendants' Motion for Summary Judgment, sworn to Sept. 16, 2008, ("Klepfish Reply Decl."), Ex. HH., Deposition of Thomas Kehrli, taken March 4, 2008, 12:14-13:20.)  To the extent that Plaintiffs raise a hearsay objection, the purportedly objectionable material would undoubtedly be admitted at trial as public or business records, and in any event need not be considered for the truth of Suarez's statements but rather to show that she made them. See Spanierman Gallery v. Merrit, No. 00-cv-5712(LTS)(THK), 2003 U.S. Dist. LEXIS 22141, at *18-19 (S.D.N.Y. Dec. 9, 2003).

assault, but denies her other allegations. (Pl. 56.1 Stmt

¶¶ 12-14.)

After Suarez's interview, Deputy Chief Joellen Kunkel

suspended Mr. Washington from active duty. (Pl. 56.1 Stmt.

¶ 15.)  At the time of his suspension, Mr. Washington

surrendered his firearms, one of which he was later found

to have kept in an unsecure location within a cardboard box

in his automobile. (Id. at ¶ 17; Klepfish Decl. Exs. L ¶ 6,

Z at 3).[2]

---

[2] Here, and in multiple instances throughout their Rule 56.1
Statement, Plaintiffs respond to Defendant's summation of
the relevant facts by saying "Admit, but deny to the extent
the statement cites to inadmissible evidence." See, e.g.,
¶¶ 15, 17, 28-30, 32, 38-39, 49-53, 55-56.  The Court
declines Plaintiffs' invitation to identify for them the
factual statements to which they object.  Where this
occurs, the statement provided by Defendants is taken as
true because Plaintiffs initial response in each instance
is "Admit."  Furthermore, the documents proffered by
Defendant to each statement challenged in this fashion
would undoubtedly be admissible at trial as public records
or business records.
    Here, for example, Plaintiffs apparently object to
consideration of Klepfish Decl. Exhibit Z, a Disciplinary
Decision by Assistant Deputy Commissioner of Trials John
Grappone dated August 23, 2005, for lack of authentication.
(Pl. 56.1 Stmt. ¶ 17; Affirmation of Counsel Walker G.
Harman, Jr. in Opposition to Summary Judgment, sworn to
August 22, 2008, ("Harman Aff."), ¶ 5.)  This document
would be admissible at trial under Fed. R. Evid. 803(8)(C)
as a public record, for which "the proponent is usually not
required to establish . . . admissibility through
foundation testimony." Jack B. Weinstein & Margaret A
Berger, Weinstein's Federal Evidence, § 803.10[2] (2d ed.
2009).  Furthermore, the document is self-authenticating
under Fed. R. Evid. 902(1) as it bears the official seal of

(cont'd on next page)

4

## B.    The July 20, 2004 Incident

On July 17, 2004, Mr. Washington filed a complaint with the NYPD alleging that Suarez was harassing him. (Affirmation of Counsel Walker G. Harman, Jr. in Opposition to Summary Judgment, sworn to August 22, 2008 ("Harman Aff."), Ex. A, Deposition of Craig Washington, taken February 7, 2008, ("C. Washington Dep."), 44:4-46:12.) Three days later, on July 20, 2004, Mr. and Mrs. Washington returned home to find Suarez waiting for them. (Klepfish Decl. Ex. O.)  The Washingtons called 911, and two police officers soon arrived on the scene, followed by Defendant Sergeant Thomas McMaster. (Id.)  Defendants contend, and Plaintiffs deny, that McMaster ordered Mr. Washington to accompany him to the police station to be interviewed but Mr. Washington angrily refused to comply.[3] (Pl. 56.1 Stmt. ¶ 20.)

---

(cont'd from previous page)

the NYPD and the signatures of both Grappone and Police Commissioner Raymond Kelly. See CA, Inc. v. Simple, Inc., No. 02 Civ. 2748 (DRH)(MLO), 2009 U.S. Dist. LEXIS 25241, at *263 (E.D.N.Y. March 5, 2009).

[3] As discussed in Part I(C)(ii) below, Mr. Washington was subsequently found guilty of being discourteous to Sergeant McMaster in connection with this incident. (Klepfish Decl. Ex. Z, at 17-18.)

### i.   Mrs. Washington's Alleged Detention

Mr. Washington subsequently drove Mrs. Washington and their two-year-old son to the police station, where they remained for approximately eight hours. (Klepfish Decl. Ex. B., Deposition of Norka Washington, taken February 7, 2008, ("N. Washington Dep."), 6:13-7-8, 23:5-6; 26:18-27:1.) Mrs. Washington testified that she and her son were held in a separate room and although she repeatedly asked to leave, Sergeant McMaster and other officers yelled at her and refused to let her go. (N. Washington Dep., 4:21-5:19, 26:15-27:7.)  Several officers interviewed Mrs. Washington for approximately one hour about the afternoon incident with Suarez. (Id. 6:1-7:24; 20:15-16.)  Mrs. Washington and her son left when Mr. Washington's interview had been completed. (Id. 23:9-13.)

### ii.   Suarez's Allegations and Washington's Arrest

Defendant Captain Pablo Martinez and members of the Bronx Investigations Unit also questioned Suarez at the station house on July 20, 2004. (Pl. 56.1 Stmt., ¶ 21.) Suarez said she had been romantically involved with Mr. Washington and that he had lived with her family in June of 2004. (See Id. ¶ 25; Klepfish Decl. Ex. O, ¶ 4.)  Suarez stated that her nine-year-old daughter, Alexis Wray, told

6

Suarez that morning that Mr. Washington had sexually molested her when he stayed with them. (Pl. 56.1 Stmt. ¶ 22.)  Specifically, Suarez said Alexis told her that Mr. Washington had touched her vagina while she slept. (Id. ¶ 23.)

Because of the serious nature of Suarez's allegations of sexual abuse, further investigation of the matter was referred to IAB and the Bronx Special Victims Squad ("SVU"). (Id. ¶ 24.)  When interviewed by IAB and SVU, Suarez again asserted that Mr. Washington had sexually assaulted her daughter. (Id. ¶ 26.)  IAB, SVU, and the Bronx County Assistant District Attorney's ("DA's") Office then scheduled a joint interview of Suarez and her daughter Alexis at the Montefiore Hospital on July 21, 2004. (Id. ¶¶ 27-31.)  They also arranged for Alexis to be medically examined by Dr. Olga Jimenez. (Id. ¶ 29.)  Both During the joint interview and when questioned by Dr. Jimenez, Alexis said Mr. Washington had lived with her mother and that during that time he had entered her bedroom and pretended to tuck her in while instead inserting his finger in her vagina. (Kerhli Dep. 57:14-22; Pl. 56.1 Stmt. ¶ 31.)

After the joint interview and medical examination, the Bronx District Attorney and the Head of IAB authorized Mr. Washington's arrest. (Pl. 56.1 Stmt. ¶ 32.)

7

C.    Procedural Background

i.    Criminal Proceedings

Mr. Washington was arrested on July 21, 2004 and charged with Sexual Abuse in the First Degree and Endangering the Welfare of a Child. (Id. ¶ 34.)  He was also charged with Assault in the Third Degree and Harassment in the Second Degree in connection with the July 10, 2004 incident. (Id. ¶ 35.)

On August 19, 2004, Bronx Assistant District Attorney Michael O'Sullivan sought a grand jury indictment on the sexual misconduct charges. (Id. ¶ 40.)  At the hearing, Mr. Washington's attorney introduced numerous taped messages Suarez had left on Mr. Washington's cell phone. (Id. ¶ 41.) In these recordings, Suarez variously asked for money, insulted and said she would contact Mrs. Washington, and threatened to fabricate charges against Mr. Washington. (See Klepfish Decl. Ex. Z at 4-5; Pl. 56.1 Stmt. ¶ 40.) Plaintiffs admit that neither IAB investigator Kehrli nor the DA knew about these tapes before Washington's attorney presented them to the grand jury. (Pl. 56.1 Stmt. ¶ 41.)

On August 20, 2004, the grand jury voted no true bill on the sexual misconduct charges, which the DA's Office then dropped. (Id. ¶ 42.)  The DA's Office dropped the

8

remaining assault charges relating to the July 10, 2004
incident shortly thereafter. (Id. ¶ 43.)

### ii.   NYPD Disciplinary Proceedings

Mr. Washington was resuspended on or about the time he
was arrested on the sexual misconduct and assault charges
described above.[4] (Id. ¶ 37.)   Two days after his arrest,
the NYPD issued a set of Departmental Charges and
Specifications charging him with (1) sexual assault on a
nine-year old girl and (2) being discourteous to a superior
officer in connection with the July 20, 2004 incident. (Id.
¶ 38.)

In mid-November of 2004, two months after the DA's
Office dropped all criminal charges, the NYPD issued a
second set of Departmental Charges and Specifications
against Mr. Washington alleging that:   (1) in June of 2004,
he tried to give his firearm to Suarez, and said "you are
ruining my life anyway, so kill me", (2) on July 8 of 2004,
he had pushed or thrown Suarez down the stairs, (3) he
pushed or threw Suarez in front of her young children, and

---

[4] In all, Mr. Washington was suspended for forty-four days
in connection with the July 10 and 20, 2004 incidents,
after which he was placed on modified assignment (making
him ineligible for overtime work and pay). (See C.
Washington Dep., 71:1-72:10.)

(4) on July 10, 2004, he failed properly to safeguard his firearm. (Pl. 56.1 Stmt. ¶ 49; Klepfish Decl. Ex. Z at 2.)

On February 4, 2005, non-party David Green, the NYPD advocate, determined that he would not prosecute the sexual misconduct and assault charges because IAB investigators, the DA's Office, and the advocate's office found them to be "unsubstantiated." (See Klepfish Decl. Ex. Z at 2, 8; Pl. 56.1 Stmt. ¶ 50, Harman Aff. Ex. C, Deposition of Thomas Kehrli, taken March 4, 2008, ("Kehrli Dep."), 94:17–95:6.) At a May 24, 2005 hearing on all Charges and Specifications against Mr. Washington before non-party John Grappone, Assistant Deputy Commissioner of Trials, Green formally moved to dismiss the assault and sexual misconduct charges. (See Pl. 56.1 Stmt. ¶ 52; Klepfish Decl. Ex. Z at 2-3.) Mr. Washington then pleaded guilty to the charge of improperly safeguarding his firearm, (See Pl. 56.1 Stmt. ¶ 53; Klepfish Decl. Ex. Z at 3), and the parties proceeded to trial on the remaining charge of discourteous conduct to a superior officer (asserted in the first set of Charges and Specifications issued in July).

Grappone issued a decision on August 23, 2005 dismissing the sexual misconduct and assault charges and finding Mr. Washington guilty of the firearm charge and of discourteous conduct. (Pl. 56.1 Stmt. ¶ 55; Klepfish Decl.

Ex. Z at 1, 3.)  Grappone recommended that Mr. Washington

forfeit the forty-four days he previously served on

suspension. (Pl. 56.1 Stmt. ¶ 56; Klepfish Decl. Ex. Z at

19.)  NYPD Commissioner Raymond Kelley adopted Grappone's

recommendation on September 23, 2005. (Pl. 56.1 Stmt. ¶ 57;

Klepfish Decl. Ex. Z at 19.)

Mr. Washington remained on modified assignment until

he filed for retirement on November 30, 2005. (C.

Washington Dep. 72:16-19.)  He alleges that because he

retired while on modified assignment, his pension was

reduced. (Second Amended Complaint ("Compl.") ¶ 40.)

### iii. Mr. Washington's EEOC Charges

On January 20, 2004, nearly six months prior to the

July 10, 2004 incident, Mr. Washington filed a Charge of

Discrimination with the Equal Employment Opportunity

Commission ("EEOC") alleging that Sergeant Kevin O'Konnor

the NYPD discriminated against him because he is African

American by refusing to allow Mr. Washington to be promoted

to a different unit. (Pl. 56.1 Stmt. ¶¶ 63-64.)  Mr.

Washington named none of the Defendants in the instant

action in his 2004 EEOC filing. (Id. ¶ 65.)

More than a year later on April 25, 2005, Mr.

Washington filed another charge of discrimination with the

EEOC alleging that several of the Defendants unlawfully
retaliated against him by filing criminal and departmental
charges against him.[5] (Klepfish Decl. Ex. DD; see also
Plaintiff's Memorandum of Law in Opposition to Defendants'
Motion for Summary Judgment ("Opp. Mem.") at 5.)

### iv.  The Instant Suit

Plaintiffs initiated this action on October 19, 2005,
and now bring nine claims against the City of New York and
individual officers who were allegedly involved in Mr.
Washington's arrest and the attendant disciplinary
proceedings.  In Counts I, II, and IV, both Plaintiffs
assert claims under Section 1983 for general deprivation of
federal rights, false arrest, and malicious abuse of
process.  Count V alleges that the City of New York's
"customs, policies, usages, practices, and procedures"
violated their constitutional rights. (Compl. ¶ 75.)  Mr.
Washington alone asserts Count III alleging malicious

---

[5] The Second Amended Complaint incorrectly alleges that
Washington filed this charge on July 22, 2005. (Compare
Second Amended Complaint ¶ 41 with Opp. Mem. at 5.)

Oddly, Mr. Washington objects to the Court's
consideration of his April 25 EEOC complaint while at the
same time, as discussed below, his assertion of unlawful
retaliation claim hinges on it. (See Harman Decl. ¶ 5.)  In
any event, Mr. Washington's April 2005 EEOC charge would be
admissible at trial as a party admission. Fed. R. Evid.
801(d)(2).

prosecution in violation of Section 1983, Counts VI, VIII, and IX alleging retaliation in violation of Title VII, the NYHRL and the Administrative Code, and Count VII alleging racially motivated deprivation of his rights in violation of Section 1981.

## II.   DISCUSSION

### A.   Summary Judgment Standard

Defendants are entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and the admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [they are] entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. Proc. 56(c)).  A fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; see also Overton v. New York State Div. of Military and Naval Affairs, 373 F.3d 83, 89 (2d Cir. 2004).

In assessing whether summary judgment is proper, the Court construes the evidence in the light most favorable to

the non-moving party. Lucente v. IBM Corp., 310 F.3d 243,

253 (2d Cir. 2002). As movants, Defendants bear the

initial burden of providing the basis for the motion and

identifying the evidentiary materials, if any, supporting

their position. See Grady v. Affiliated Central, Inc., 130

F.3d 553, 559 (2d Cir. 1997.) Plaintiffs must then "come

forward with specific facts showing that there is a genuine

issue for trial." Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed.

R. Civ. P. 56(e). Mere speculation and conjecture will not

suffice. See Niagara Mohawk Power Corp. v. Jones Chemical

Inc., 315 F.3d 171, 175 (2d Cir. 2002).

## B.   Analysis

### i.   Mr. Washington's Claims

Mr. Washington makes virtually no effort to preserve

any of his claims other than his retaliation claim.[6]

---

[6] Indeed, as Defendants observe, the Conclusion of
Plaintiffs' brief in opposition to the instant motion
asserts only that:

> "there is sufficient evidence raising triable
> issues as to whether the disciplinary charges
> brought against Plaintiff Craig Washington in
> November 2004 were brought in retaliation for
> his January 2004 EEOC Charge, whether the
> refusal to restore Plaintiff Craig Washington
> to full-duty was carried out in retaliation for

(cont'd on next page)

Therefore, Defendants' motion will be granted with respect

to his false arrest, malicious prosecution, abuse of

process, and discrimination claims so long as they have met

their threshold burden of production. See Vermont Teddy

Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 241 (2d

Cir. 2004) ("Even when a motion for summary judgment is

unopposed, the district court is not relieved of its duty

to decide whether the movant is entitled to judgment as a

matter of law.")

### a. False Arrest

Mr. Washington cannot prevail on his false arrest

claim if Defendants show they had probable cause to arrest

him. See DevenPeck v. Alford, 543 U.S. 146, 152 (2004);

Jaegly v. Couch, 439 F.3d 149, 151-54 (2d Cir. 2004)

(probable cause is an absolute defense to a false arrest

claim under Section 1983); see also Boyd v. City of New

York, 336 F.3d 72, 75 (2d Cir. 2003)(same). An officer has

probable cause to arrest when "he or she has 'knowledge or

---

(cont'd from previous page)

Plaintiff Craig Washington's April 2005 EEOC
Charge, and whether Plaintiff Norka Washington
was detained without the requisite probable
cause or reasonable suspicion, pursuant to the
Fourth Amendment."

(Plaintiffs' Memorandum of Law in Opposition to Defendants'
Motion for Summary Judgment, ("Opp. Mem.") at 14-15.

reasonably trustworthy information of facts and
circumstances that are sufficient to warrant a person of
reasonable caution in the belief that the person to be
arrested has committed or is committing a crime.'" Jaegly,
439 F.3d at 152 (quoting Weyant v. Okst, 101 F.3d 845, 852
(2d Cir. 1996).

Here, Defendants have produced ample undisputed
evidence demonstrating probable cause for Mr. Washington's
arrest on charges of assault and sexual misconduct based
not only on IAB and DA interviews with Suarez but also on
an interview and medical examination of her daughter, who
said that Mr. Washington had molested her. (See Kehrli Dep.
51:7-22, 52:10-53:11, 56:5-58:16; Klepfish Decl. Ex. O).
The fact that these charges were later dropped does not
negate the existence of probable cause at the time of the
arrest, particularly given that, as Mr. Washington
concedes, neither the DA nor IAB knew about the exculpatory
cell phone tapes before they were played to the grand jury.
See Smith v. Ortiz, 2006 U.S. Dist. LEXIS 34153, *12
(S.D.N.Y. 2006) (subsequent acquittal does not negate
validity of arrest); (Pl. 56.1 Stmt. ¶ 41).

Furthermore, even if the Defendant Officers lacked
probable cause to arrest Mr. Washington, they are entitled
to qualified immunity if they had "arguable probable cause

16

to arrest" him. Guerrero v. Scarazzini, No. 06-5016-cv,
2008 U.S. App. LEXIS 8785, at *4 (2d Cir. Feb. 23, 2008).
Defendants had arguable probable cause if (i) it was
objectively reasonable to believe there was probable cause
to arrest Mr. Washington or (ii) officers of reasonable
competence could disagree as to whether the probable cause
test was met. Id. Here, Plaintiff does not contest that
the IAB and DA interviews gave probable cause, much less
arguable probable cause, to arrest Mr. Washington.
Accordingly, Defendants' motion for summary judgment is
granted with respect to Mr. Washington's false arrest
claim.

### b.     Malicious Prosecution

Mr. Washington's malicious prosecution claim must also
fail. It is well-settled that the existence of probable
cause supporting an arrest "precludes plaintiffs from
establishing a malicious prosecution claim unless they can
point to facts uncovered after the arrest that negated that
probable cause by making apparent the 'groundless nature of
the charges.'" Rodriguez v. City of New York, 535 F. Supp.
2d 436, 443 (S.D.N.Y. 2008) (quoting Lowth v. Town of
Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996). As discussed
above, Defendants have supplied uncontested evidence of

probable cause supporting Mr. Washington's arrest.
Furthermore, Plaintiff does not deny that the DA dropped
the sexual misconduct charges upon hearing the tapes
calling Suarez's credibility into question and the assault
charges stemming from Suarez's July 10 allegations shortly
thereafter. (Pl. 56.1 Stmt. ¶¶ 42-43.) Defendant's motion
for summary judgment with respect to Mr. Washington's
malicious prosecution claim is therefore granted.

### c.   Malicious Abuse of Process

Mr. Washington asserts that his arrest and abortive
prosecution constitute malicious abuse of process in
violation of Section 1983.  To establish such a claim, he
must show that the Defendants "(1) employ[ed] regularly
issued legal process to compel performance or forbearance
of some act (2) with intent to do harm without excuse or
justification, and (3) in order to obtain a collateral
objective that is outside the legitimate ends of the
process." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).
Here, Defendants have introduced evidence that Mr.
Washington was arrested and charged pursuant to an
investigation into serious allegations against him by
civilian non-parties.  Mr. Washington has provided neither
facts nor argument beyond the general and conclusory

18

allegations in his Complaint to support his claim that Defendants arrested him without justification to achieve an illegitimate objective. (See Compl. ¶¶ 67-70.) Accordingly, this claim fails as a matter of law. See Mohawk Power, 315 F.3d 171, 175 (2d Cir. 2002) (conclusory assertions do not create an issue of fact for trial).

### d. Discrimination

Defendants are also entitled to summary judgment on Mr. Washington's direct race discrimination claims under Section 1981 and Title VII because he has not established a prima facie case of discrimination and, even if he had, they have introduced non-discriminatory reasons for the allegedly discriminatory behavior which Mr. Washington has not shown to be pretextual. To establish a prima facie case of employment discrimination, Mr. Washington must show that (i) he is a member of a protected class, (ii) he was qualified for his position, (iii) he suffered an adverse employment action, and (iv) the circumstances of the adverse action "give rise to an inference of discrimination." Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). Should he succeed, the burden shifts to the Defendants to "to articulate a legitimate, non-discriminatory reason for the adverse action." Id. If

Defendants meet this burden, they are entitled to summary
judgment unless Mr. Washington can show that the
Defendants' non-discriminatory explanation is merely a
pretext for discrimination. Marlo v. P&C Food Mkts., 313
F.3d 758, 767 (2d Cir. 2002); Cedeno v. N.Y. City Transit
Auth., No. 01-9049, 2002 U.S. App. LEXIS 23106, at *3 (2d
Cir. November 5, 2002); see also Bickerstaff v. Vassar
College, 354 F. Supp. 2d 276, 280n.2 (2d Cir. 2004)(noting
that Title VII and Section 1981 claims "are analyzed under
the same framework").

Here, Mr. Washington has not shown circumstances
giving rise to an inference of discrimination.  To the
contrary, he flatly concedes that "none of the defendants
in this action ever said something to [him] which evidenced
animus against [his] race." (Pl. 56.1 Stmt. ¶ 67.)  Mr.
Washington has offered nothing other than speculation that
Defendants' actions were motivated by race-based animus and
he has made no serious response to Defendants extensive
argument in favor of summary judgment on this point. (See
Memorandum of Law of City Defendants in Support of Their
Motion for Summary Judgment, ("Def. Mem."), at 13-18.); see
also Sharif v. Buck, No. 04-5789-cv, 2005 U.S. App. LEXIS
22363, *3 (2d Cir. Oct. 17, 2005) (no inference of
discrimination where plaintiff offered only conclusory

allegations to support claim); Brown v. City of Oneonta,
221 F.3d 329, 339 (2d Cir. 2000)(dismissing Section 1983
and Section 1981 claims for inadequate allegations of
discriminatory intent).

Furthermore, Mr. Washington has made no attempt to
show that the Defendants' non-discriminatory reasons for
taking disciplinary action, namely the serious allegations
Suarez, a non-party, leveled against him, his admitted
failure to properly safeguard his firearm on July 10, 2004,
and the finding that he was disrespectful to a superior
officer on July 20, 2004, were pretextual. (See Def. Mem.
at 16-18.)  Accordingly, Mr. Washington's direct
discrimination claims under Title VII and Section 1981 fail
as a matter of law.

### e.    Retaliation

Mr. Washington actively opposes the instant motion
only with respect to his retaliation claim under Title VII
and the NYHRL.  To establish a prima facie case of
retaliation, he must show that (1) he was engaged in a
protected activity, (2) Defendants knew of the activity,
(3) he suffered an adverse employment action, and (4) there
was a causal connection between the protected activity and
the adverse employment action. Reed v. A.W. Lawrence & Co.,

Inc., 95 F.3d 1170, 1178 (2d Cir. 1996) (citing Manoharan
v. Columbia Univ. Coll. of Physicians & Surgeons, 842 F.2d
590, 593 (2d Cir. 1988).[7] As with the direct discrimination
claims, should Mr. Washington establish a prima facie case
of retaliation, the burden shifts to Defendants to provide
a legitimate, nondiscriminatory reason for their actions,
which he must then show to be pretextual. Thomas v.
S.E.A.L. Security, Inc., NO. 04 Civ. 10248, 2007 U.S. Dist.
LEXIS 63841, *38 (S.D.N.Y. August 30, 2007).

Mr. Washington has not established a prima facie case
because he has proffered no evidence showing a causal
connection between his protected activity and the allegedly
retaliatory conduct. He contends that Defendants
effectuated his arrest and initiated disciplinary
proceedings against him in retaliation for his January 20,
2004 and April 25, 2005 EEOC filings. He argues that the
temporal proximity between these filings and his arrest and
suspension, standing alone, constitutes sufficient
circumstantial evidence to support an inference of
causation. (Opp. Mem. 7.)

_____

[7] The same standard applies to Mr. Washington's NYHRL claims
"because New York courts rely on federal law when
determining claims under the New York Human Rights law."
Reed, 95 F.3d 1170, 1177 (citations omitted)

This contention is untenable.  While courts may infer a causal link in the absence of direct evidence of discrimination where the alleged retaliation occurred shortly after a plaintiff engaged in protected activity, too much time elapsed between Mr. Washington's January 20, 2004 filing and his suspension following Suarez's initial assault complaint in mid-July to warrant such an inference here. See Hollander v. Am. Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990) (dismissing retaliation claim on summary judgment where there was a three-month lapse between the protected activity and the alleged retaliation); Lewis v. Snow, No. 01 Civ. 7785, 2003 WL 22077457, at *8 (S.D.N.Y. Sept. 8, 2003) (same).  Indeed, Mr. Washington cites only cases in which the adverse action occurred within two to three months of participation in a protected activity. See Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001) (twenty-day time lapse); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998) (less than two-month time lapse); Parrish v. Sollecito, 258 F. Supp. 2d 264, 269 (S.D.N.Y. 2003) (one to three month lapse); Santos v. Costco Wholesale, Inc., 271 F. Supp. 2d 565, 575 (S.D.N.Y. 2003)(three-month lapse).  Here, however, there is an almost six-month gap between Mr. Washington's initial EEOC filing and his suspension and subsequent arrest.

Mr. Washington's temporal proximity argument with respect to his April 25, 2005 EEOC Charge is even more tenuous. He contends that a causal link may be inferred between the April filing and the decision to keep him on modified assignment until he retired. (Opp. Mem. at 7-8.) However, mere continuation of an adverse employment condition initiated long before the protected activity in question does not, without more, logically support an inference that the protected activity prompted retaliation. See Chamberlain v. Principi, No. 06-1291-cv, 2007 U.S. App. LEXIS 21829, at *6 (2d Cir. Sept. 12, 2007)("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.")(quoting Slattery v. Swiss Reinsurance Am., 248 F.3d 87, 95 (2d Cir. 2001)). Here, Mr. Washington was placed on modified assignment more than six months before he filed the April 25,2005 EEOC charge, and there is simply no support for Mr. Washington's conclusion that he continued to be on modified assignment after that time due to retaliation for that filing.[8]  Nor,

---

[8] In this regard, I note that Mr. Washington has not even alleged that any Defendants knew about either of his EEOC Complaints or even that he ever sought to be taken off of modified assignment.

24

as Defendants observe, is there any evidence that Mr.
Washington ever asked to be removed from modified
assignment before he retired. (Reply Memorandum of Law of
City Defendants in Support of Their Motion for Summary
Judgment ("Reply Mem."), at 6.)

Finally, even if Mr. Washington had established a
prima facie case of retaliation, he has not shown that
Defendants' proffered non-discriminatory reasons for his
arrest and the disciplinary actions taken against him,
already discussed in connection with his direct
discrimination claims, are pretextual. (See Part
II(B)(i)(d).)  In this regard, Mr. Washington simply
asserts that the IAB did an inadequate investigation of
Suarez's allegations before disciplining him.[9] (Opp. Mem. at
9.)  However, he does not provide even a conclusory
argument as to how the supposedly inadequate investigation
was prompted by either of Mr. Washington's EEOC charges,
the first of which, as he concedes, named none of the
Defendants in this action. (See Pl. 56.1 Stmt. ¶ 65.)
Accordingly, Mr. Washington's retaliation claim fails as a
matter of law.

---

[9] Notably Mr. Washington does not address Defendants'
observation that Mr. Washington pleaded guilty to having
failed properly to secure his firearm and was found guilty
after an evidentiary hearing of being discourteous to
Sergeant McMaster. (Def. Mem. 22.)

25

ii.  Mrs. Washington's claims

Mrs. Washington asserts claims under Section 1983 for false arrest and malicious abuse of process stemming from her alleged detention at the police station immediately following the Washingtons' July 20, 2004 encounter with Suarez.  The parties agree that the fundamental question with respect to the false arrest claim is whether Mrs. Washington was taken into custody in violation of her Fourth Amendment right to be free from unreasonable seizure. (Def. Mem. at 23; Opp. Mem. at 11-12.)  Resolution of this issue requires determination of "whether a reasonable person in [Mrs. Washington's] position would have understood [her]self to be subjected to the restraints comparable to those associated with a formal arrest." Hicks v. City of Buffalo, No. 03-6119, 2004 WL 2616750, at *2 (2d Cir. Nov. 18, 2004) (quoting United States v. Newton, 369 F.3d 659, 671 (2d Cir. 2004)).

Defendants argue that Mrs. Washington was never taken into custody because she voluntarily accompanied her husband to the station. (Def. Mem. 23; N. Washington Dep., 6:13-7:11).  They also rely on Defendant Dowd's deposition testimony that "Mrs. Washington was not under arrest" and "could leave at any time." (Def. Mem. 23; Klepfish Decl. Ex. F, Deposition of Robert Dowd, taken March 8, 2008

("Dowd Dep."), 43:19-22.)   Defendants posit that Mrs.

Washington chose to remain at the station until her

husband's interview had been completed because she is

legally blind and did not want to drive herself home. (Def.

Mem. at 23.)

Mrs. Washington does not dispute that she came to the

station house with her husband rather than in a police car.

However, she asserts that she was then inexplicably placed

in a room alone with her two-year-old son and told not to

leave. (N. Washington Dep. 5:10-13).   She repeatedly asked

to go home, but Defendant McMaster yelled at her and told

her to "stay there until I come get you." (Id. 5:12-13.)

All told, she remained at the station house for more than

eight hours. (Id. 6:13-7:8, 23:5-6; 26:18-27:7; Opp. Mem.

at 3.)

Viewing the evidence in the light most favorable to

Mrs. Washington, there is a material factual dispute as to

whether a reasonable person in her position would have felt

compelled by the authorities to remain in the station house

under the circumstances as she describes them.   Although

Defendants present a compelling argument that she

voluntarily awaited her husband's release, her testimony

indicates otherwise.   Should a jury find her account

credible, it might conclude that a reasonable person in

Mrs. Washington's position would have felt herself to be restrained in a fashion similar to a formal arrest. Accordingly, Defendants' motion for summary judgment on Mrs. Washington's false arrest claim is denied.

Mrs. Washington also asserts a malicious abuse of process claim. (Compl. ¶¶67-70.)  This claim fails because she has identified no "regularly issued legal process" used against her to obtain any sort of illegitimate collateral objective. Cook, 41 F.3d at 80.

### iii. Joint Municipal Liability Claim

Both Plaintiffs assert that under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), the City of New York is vicariously liable for the alleged civil rights violations because of the City's unconstitutional "customs, policies, usages, practices, procedures, and rules." (Compl. ¶ 73.) However, as Defendants correctly observe, Plaintiffs have not identified any improper action taken against them as a result of an unlawful municipal policy or practice. Accordingly, Defendants' motion is granted with respect to this claim and the City of New York is therefore dismissed from the action. See Hicks, 2004 WL 2616750 at *1 (affirming summary judgment dismissal of Monell claim "[b]ecause the record is here bereft of any

28

unconstitutional custom or practice on the part of the City.")

### iv. Joint "Deprivation of Federal Civil Rights"

Although Defendants seek dismissal of all claims, neither party provides substantive argument regarding the "Deprivation of Federal Civil Rights" claim asserted in Count I of the Complaint. (Compl. ¶¶ 43-48.) This ill-defined claim alleges generally that Defendants violated Plaintiffs' rights under the "First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution" in violation of Section 1983. (Id. ¶ 49.) Such general allegations, without supporting facts other than a clause incorporating an entire complaint by reference, are insufficient to withstand even a motion to dismiss because they do not give "fair notice of what the claim is and the grounds upon which it rests." Sforza v. City of New York, No. 07cv6122(DLC), 2009 WL 857496, at *12 (S.D.N.Y. March 31, 2009) (quoting Liebowitz v. Cornell University, 445 F.3d 586, 591 (2d Cir. 2006). Accordingly, this claim is dismissed. See Diodati v. City of Little Falls, No. 6:04-cv-446 (FJS/DEP), 2007 WL 189130 (N.D.N.Y. Jan. 22, 2007) (granting summary judgment dismissing general deprivation

of federal rights claim where parties provided no

substantive argument regarding the cause of action.)

III. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [dkt. No. 31] is GRANTED with respect to all claims asserted by Mr. Washington and Mrs. Washington's malicious abuse of process and municipal liability claims. The motion is DENIED with respect to Mrs. Washington's claim of false arrest in violation of Section 1983.

Counsel shall confer and inform the Court by letter no later than June 20 how they propose to proceed.

Dated:     New York, New York
           June 5, 2009

                                    _____
                                    LORETTA A. PRESKA, U.S.D.J.